FILED

2006 Mar-30  PM 05:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **MARVIN C. JENKINS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **1:05-cv-01029-UWC-JEO** |
| **WARDEN D.B. DREW,** | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Marvin C. Jenkins (hereinafter "the Petitioner") has filed a *pro se* petition and motion pursuant to 28 U.S.C. § 2241, requesting that he receive *nunc pro tunc* designation regarding his federal sentence. (Docs. 1 & 4.)[1]  The United States ("the Respondent") has filed a response to the pleadings (hereinafter "Response" (Doc. 11)) and the Petitioner has filed his reply (hereinafter "Reply" (Doc. 12)).  Upon consideration of the petition and response thereto, and upon *sua sponte* reconsideration of its prior recommendation against *nunc pro tunc* designation, the Court will grant the petition.

---

[1] References herein to "Doc. ___" are to the document numbers in the clerk's file.  The petition and motion are collectively referenced herein as the petition for *nunc pro tunc* designation.

## BACKGROUND

The Petitioner is currently confined at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega").  (Response, Ex. A.)  His Federal Bureau of Prisons ("BOP") custody commenced on May 1, 2003, pursuant to a federal detainer that had been lodged against his state sentence.  (Response, Exs. C & D.)  The BOP has used that date (May 1, 2003) for determining his proposed release date.  (Response, Ex. D at 2.)

The Petitioner contends that the BOP has improperly denied his request for *nunc pro tunc* designation which would have permitted his federal sentence to commence at the date of its imposition rather than when the Petitioner was received by the BOP.  (*See* Petition; Motion for *Nunc Pro Tunc* Designation.)  The Respondent asserts that the petition and motion are due to be denied.  (Response.)[2]

## FACTS

This is not the first filing of the Petitioner concerning the service of his state and federal sentences.  As the Respondent correctly notes, the operative facts have been previously found by the Court.

> On or about April 24, 1996, the petitioner was arrested by Alabama authorities for possession of a controlled substance ([Doc. 14] at Ex. B (Conviction Report in *State of Alabama v.*

---

[2] The response is located at document 11.  It includes the exhibits submitted by the respondent.

*Marvin Jenkins*, No. 1997-000876, Jefferson County (Bessemer) Circuit Court)). He was also arrested by Alabama authorities on November 3, 1997, for Third-Degree Burglary. (*Id.* at Ex. C (Conviction Report in *State of Alabama v. Marvin Jenkins*, No. 1997-001332, Jefferson County (Bessemer) Circuit Court)).

On July 8, 1998, an indictment was returned in this court charging the petitioner with two counts of distribution of a controlled substance. (Doc. 14 at Ex. D (*United States v. Marvin Jenkins*, CR 98-C-0211-S)). On July 14, 1998, this court issued a writ of habeas corpus ad prosequendum to secure the presence of the petitioner for arraignment on the federal charge. (Doc. 14 at Ex. E). The arraignment was rescheduled to July 22, 1998, "until [his] attorney [could be] present." (Doc. 14 at Ex. F). A second writ of habeas corpus ad prosequendum was issued. (Doc. 14 at Ex. G). On July 22, 1998, the petitioner was arraigned, appointed counsel, and "remanded to custody of the United States Marshal [due to the] pending state charges." (Doc. 14 at Ex. H).

On August 27, 1998, the petitioner's counsel filed a motion to continue his September 8, 1998, federal trial date on the ground that he had "pending charges in state court; [s]aid pending state court charges have complicated plea bargain negotiations . . . . as efforts have been undertaken to reach an agreement which will dispose of all pending state and federal charges; . . . ." (Doc. 14 at Ex. I). The motion to continue was granted on September 2, 1998. (*Id.*).

During the pretrial proceedings, a possible conflict arose and the government was ordered "to prepare a writ for the presence of the defendant at [a] hearing scheduled for October 20, 1998." (Doc. 14 at Ex. M). A writ of habeas corpus ad prosequendum was issued to produce the petitioner for the October 20, 1998 hearing. (Doc. 14 at Ex. N). Following the hearing, the court found that there was no conflict of interest on the part of counsel. (Doc. 14, Ex. O at 2).

On November 10, 1998, the petitioner was convicted on the federal charges following a jury trial. (Doc. 14 at Ex. P). Sentencing was set for April 5, 1999. (Doc. 14 at Ex. Q). He was sentenced on that day to serve 210 months custody on each charge with the sentences to run concurrently. He was also sentenced to five (5) years supervised release and given a fine. (Doc. 14 at Ex. S).

On May 3, 1999, the petitioner was sentenced to fifteen (15) years custody on his state charges with the sentences to run concurrently with each other and with the federal sentence. Petitioner was received into the custody of the Alabama Department of Corrections on May 23, 1999. (Doc. 14 at Ex. A).

Detainers were placed with the Alabama Department of Corrections concerning the petitioner on June 24, 1999, by the United States Marshal for service of his 210 month sentence and on September 9, 1999, by the state of Georgia for receiving stolen property, forgery, and drug violations. (Doc. 14 at Ex. A).

The petitioner appealed his federal sentence and, on September 28, 2000, the Eleventh Circuit Court of Appeals affirmed his conviction and sentence. (Doc. 14 at Ex. T).[3]

(Response, Ex. B.)

The Petitioner filed his first application for a writ of habeas corpus on January 4, 2001. He contended that his federal conviction was due to be set aside premised on the purported failure of this Court to maintain custody of him. (Response, Ex. B.) That petition was dismissed due to the Petitioner's failure to exhaust administrative remedies. (*Id*.) The Court also noted that the Petitioner's federal sentence had not

---

[3] *Marvin C. Jenkins v. United States*, No. CV-01-H-0046-NE (N.D. Ala. August 23, 2002). (Ex. A.)

4

commenced, there appeared to be no statutory or constitutional violation, and his federal conviction and sentence appeared to be valid. (*Id*. at 4-5.)

The Petitioner was received into BOP custody on May 1, 2003, when he was released from the Alabama Department of Corrections to a detainer issued by the United States Marshals Service. (Response, Exs. C & D.) BOP commenced his service date at that point. (*Id*., Ex. D at 2.) On July 17, 2003, Regional Inmate Systems Administrator John Gaither wrote to this court to determine if it had any objection to the BOP making a *nunc pro tunc* designation as to the Petitioner's sentence. (*Id*., Ex. D at 3; Ex. E.) This would result in the commencement of the petitioner's federal sentence on the date of its imposition (April 5, 1999).

On January 3, 2005, Deputy Chief U.S. Probation Officer Cynthia McGough wrote Gaither on behalf of the undersigned and advised him that "it is our recommendation that there not be a *nunc pro tunc* designation in this case." (*Id*., Ex. F.) On January 13, 2005, Gaither wrote to the Petitioner to advise him that, based upon the opposition of the court to *nunc pro tunc* designation and the applicable BOP policy, the Petitioner's request for *nunc pro tunc* designation had been denied. (*Id*., Ex. G.)

**DISCUSSION**

A.  The Applicable Law

5

As a general proposition, a federal sentence is calculated from the date on which a defendant is delivered to federal custody for service of the sentence. 18 U.S.C. § 3585(a).[4]

If a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. At all material times, the state has primary jurisdiction over the defendant; and the defendant will be returned to state custody upon the completion of the federal proceedings. *Causey v. Civiletti,* 621 F.2d 691 (5th Cir. 1980).[5] "A person who has violated the criminal statutes of both the Federal and State Governments may not complain of the order in which he is tried or punished for such offenses." *Id.* at 694 (quoting *Gunter v. Squier,* 185 F.2d 470, 471 (9th Cir. 1950)).

Generally, the BOP does not recognize the start date of a federal sentence until the prisoner arrives at a BOP facility. *See Weeks v. Fleming*, 301 F.3d 1175, 1179-80 (10th Cir. 2002). Following the completion of his state sentence, an inmate may

---

[4] 18 U.S.C. § 3585(a) provides:

> **(a) Commencement of sentence**. –A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily at, the official detention facility at which the sentence is to be served.

[5] Decisions of the former Fifth Circuit Court of Appeals decided on or before September 20, 1981, are binding precedent in this Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*).

request *nunc pro tunc* designation for purposes of BOP sentencing calculations. *See Barden v. Keohane*, 921 F.2d 476, 483-84 (3d Cir. 1990).

The BOP guidelines for *nunc pro tunc* designations are explained in its Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence (Response, Ex. H). The BOP will implement such a sentence upon the order or recommendation of a federal sentencing court. The BOP will also consider a request from an inmate or state authority when the intent of the federal sentencing court is unclear. The BOP will not allow a concurrent designation if the federal sentencing court has already made a determination regarding the order of service of a federal and state sentence. If the court is silent regarding its intent, the relevant program statement specifically instructs the BOP to ascertain whether the federal sentencing court has any objections. Ordinarily, the BOP will not grant a *nunc pro tunc* designation if the federal sentencing court objects.

## B. Analysis

Here, the BOP's failure to grant the Petitioner's requested *nunc pro tunc* designation is primarily based on this Court's recommendation. In hindsight, the Court was probably mistaken in its initial recommendation to the BOP. The Court had not given the appropriate weight to the state judge's order that the state and federal sentences be served concurrently. Aside from the Petitioner's lengthy

7

criminal record, which is reflected appropriately in the lengthy (17 ½ years ) federal sentence imposed by the Court, the Court knows of no reason why the concurrent sentence imposed by the state judge should not be respected.

In light of the concurrent sentence imposed by the state judge, this Court has no objections to a *nunc pro tunc* designation by the BOP.

Accordingly, the petition for a *nunc pro tunc* designation will be granted by separate order.

Done this 30th day of March, 2006.

_____
U.W. Clemon
Chief United States District Judge